* 1 0 6 2 6 9 0 2 1 7 *

# IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

ORIG

FILED
SUPREME COURT
STATE OF OKLAHOMA

OCT 14 2025

SELDEN JONES
CLERK

Ryan Coleman,

Petitioner/Appellant,

v.

Exhibit #5

Ebony Coleman,

Respondent/Appellee.

Case No. 123463

Received:
Docketed:
Marshal: 10-14-25
COA/OKC: pc
COA/TUL:

**EMERGENCY SUPPLEMENT TO PETITION IN ERROR**

(GAL Bias, Suppression of Evidence, Structural Systemic Bias — DHS, Palomar, ADA, Judicial Recusal, and Attorney Misconduct)

## I. Introduction

This case is not about parenting preferences; it is about due process, fairness, and the rule of law.

Ryan Coleman has been his daughter's primary caretaker for her entire life. He has raised her through school, extracurriculars, and day-to-day life. Independent recognition of his role is reflected in Metro Family Magazine, where he was featured as an advocate for school choice, and reinforced by testimony and recordings showing his active, nurturing care — hiking, library visits, community engagement, and consistent presence.

By contrast, Respondent has a documented history of using VPOs as custody and relocation tools, both in Oklahoma and California. She admitted violating those orders — while simultaneously asserting she "knew she could not" violate them — and nevertheless received the benefit of relocation and custody leverage.

Despite every witness — including Respondent — acknowledging that the child was safe with Petitioner, and despite neutral body-camera footage proving the same, the proceedings were derailed by:

- Coached allegations through Palomar,
- DHS's refusal to interview Petitioner after he asserted his right to counsel,
- Suppression of GAL recommendations,
- One-sided billing and investigation focused only on Respondent's narrative,
- Ex parte communications between GAL and opposing counsel,
- Disability bias targeting Petitioner's lifelong stutter, and
- Judicial missteps culminating in recusal for bias.

This cascade of unfairness — all on the record — produced unconstitutional outcomes that cannot stand.

## II. DHS and Palomar — System Entry

1. DHS: When Petitioner asserted his right to counsel, DHS refused to interview him. Exercising a constitutional right resulted in silence from the very agency charged with fact-finding.
2. Palomar: Staff filled out Respondent's VPO paperwork and directed her to add children under the guise of "safety," fabricating the predicate for ongoing custody restrictions.

Neither agency admitted the neutral body-cam evidence, in which Respondent herself told police the child was safe with father.

## III. Early GAL Findings (Pre-Dow)

- In June 2024, GAL Miranda Long (via attorney Lily Crunkshank) communicated that:
  - Respondent's use of the VPO was improper,
  - Petitioner posed no safety concerns, and
  - The child wanted equal time with both parents.
- 

These findings were consistent with trial testimony from every witness, including Respondent.

## IV. The 9/11 Pivot

- At the September 11, 2024 hearing, Respondent told the Court she was willing to agree to 50/50 custody.
- GAL Long was absent, leaving the record incomplete.
- The Court permitted Crunkshank's withdrawal; Petitioner objected, requesting assistance with custody issues. The Court responded, "Ms. Dow is fair" — elevating opposing counsel into a quasi-neutral position.
- Shortly after, Long emailed Petitioner that Dow told her Petitioner was "complaining to the judge about her." This information was never from the record — it was an ex parte communication.

This was the turning point: neutrality ended, and structural bias set in.

## V. Suppression of Recommendations

- Court order required GAL recommendations prior to mediation.
- Billing shows recommendations were completed Oct. 31, 2024, one day after mediation.

- Ditto emails confirm they were circulated to mediator, My My Houng, and Dow but withheld from Petitioner.
- Petitioner repeatedly requested them (Nov. 22, Dec. 6, Jan. 7). No response.
- In January 2025, Long reversed course, stating she "does not make final recommendations until trial" — contradicting her own Oct. 31 admission.

This violated 43 O.S. § 107.3 and the GAL handbook, as well as the Court's own orders.

## VI. The Feb. 7 Hearing

- Petitioner moved to compel recommendations before mediation. Recomendations already share with outside counsel My My Houng violating GAL Handbook and State Statute.
- Judge Siderias refused, stating pro se parents "don't get them" because "children could read them." This contradicted statute and handbook.
- Instead of enforcing his own orders, the Court allowed Long to restart her investigation reviewing only Respondent's while ignoring Petitioner's evidence(heat, health, and safety claims .
- GAL billing confirms one-sided review after Feb. 7.
- Petitioner objected on the record, stating Long and Dow were "working together."
- On Sept. 26, 2025, Judge Siderias ultimately recused for bias.

## VII. Evidence Suppression and ADA Bias

- The body-cam, the single neutral piece of evidence, was never admitted.
- Long testified Petitioner was "manipulating law enforcement, without any evidence of manipulation besides testimony he was "faking a stutter.'
  - In fact, Petitioner's severe stutter is lifelong and documented.
  - No objection or accommodation was made — a direct ADA violation, denying credibility based on disability.

## VIII. System Entrenchment

- Allyson Dow: benefited from hidden recommendations, opposed admission of body-cam, engaged in ex parte communications, and misrepresented GAL status to court staff. As a Governor of the Oklahoma Bar Association, she owed heightened ethical duties.
- Steve Ditto: confirmed GAL circulated recommendations by mediation but refused cross-examination, then leaked Petitioner's privileged file to Dow.
- Court: failed to enforce its orders, punished Petitioner for purchasing transcripts used to correct its own record, and only recused after bias was raised.

## IX. VPO Abuse History

- Respondent admitted violating a long-term VPO in California while using it to secure relocation and custody leverage.
- She repeated the same tactic in Oklahoma: filing, amending, and misusing VPOs while concealing violations.
- She admitted on the record that she "knew she could not violate" and yet did.
- This is now a two-state, multi-case pattern of VPO abuse for custody and relocation purposes.

## X. Relief Requested

Petitioner respectfully requests:

1. Stay: Stay all effect of GAL recommendations until evidentiary hearing.
2. Compel: Order production of all GAL communications, billing, and contact logs.
3. Testimony: Limited evidentiary hearing on recommendations' foundation, timing, and circulation.
4. Body-Cam: In-camera review and admission on remand.
5. Protective Order: Ban all off-record/ex parte GAL–attorney–judge communications.

6. ADA Compliance: Training and acknowledgement of duty to accommodate speech disability.
7. Monitoring: Deadlines, disclosure, and cross-check requirements for GAL.
8. Conditional Disqualification of GAL: If testimony confirms bias, strike recommendations and disqualify.
9. Disqualification of Opposing Counsel: Disqualify Allyson Dow due to Bar Governor role, ex parte involvement, and appearance of bias.
10. Privilege Protection: Confirm attorney-client privilege not waived; disallow use of Ditto leak.
11. Federal Safeguards: Recognize Petitioner's right to pursue ADA and constitutional claims in federal court.
12. Right to Sue Preserved: Petitioner's claims for civil rights violations remain intact.
13. Suit Money & Time: Provide funds and time to obtain supplemental records (California VPO, transcripts).

## XI. Conclusion

Every witness said the child was safe with father. Neutral evidence proved it. Yet Respondent manipulated VPOs, DHS refused to interview, GAL suppressed recommendations, Dow exploited her Bar position, and the Court punished Petitioner for asserting his rights — until it finally recused for bias.

This Court must intervene to restore due process, enforce statutory duties, and protect both the best interests of the child and the constitutional rights of the parent.

Respectfully submitted,

Ryan Coleman

...